IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CLIFFORD ELLIS (AIS# 208226), | * |
| | * |
| Plaintiff, | * |
| V. | * |
| | *   2:05-CV-1020-D |
| JAMES DELOACH, et al. | * |
| Defendants. | * |
| | * |

## SPECIAL REPORT OF DEFENDANT PHS

COMES NOW defendant, Prison Health Services, Inc. (who is incorrectly named in the plaintiff's Complaint as "Prison Health Services") (hereinafter "PHS") in response to this Honorable Court's Order of November 2, 2005, and presents the following Special Report with regard to this matter:

### I. INTRODUCTION

The plaintiff, Clifford Ellis (AIS# 208226), is an inmate who has been confined at Elmore Correctional Facility located in Elmore County, Alabama, since December 10, 2004. The defendant, PHS is the company that currently contracts with the Alabama Department of Corrections to provide healthcare to inmates. On October 25, 2005, Ellis filed a Complaint against PHS alleging that he has been denied appropriate medical treatment by the medical staff at Staton Correctional Facility in violation of his constitutional rights.[1] (See Complaint). Specifically, Ellis claims that PHS has failed to

---

[1] Elmore Correctional Facility does not have an infirmary. All of Elmore's inmates, including the plaintiff, are treated at neighboring Staton Correctional Facility.

properly treat injuries he sustained as a result of an automobile accident that occurred on October 28, 2004. (Id.)

As directed, PHS has undertaken a review of plaintiff Ellis' claims to determine the facts and circumstances relevant thereto. At this time, PHS is submitting this Special Report, which is supported by certified copies of plaintiff Ellis' medical records (attached hereto as Exhibit "A") and the Affidavit of Winfred D. Williams, M.D. (attached hereto as Exhibit "B"). These evidentiary materials demonstrate that plaintiff Ellis has been provided appropriate medical treatment at all times, and that the allegations in his Complaint are false and without merit.

## II. NARRATIVE SUMMARY OF FACTS

Clifford Ellis (AIS# 208221) is an inmate who was incarcerated at Elmore Correctional Facility at all times pertinent to this lawsuit. (See Exhibits "A" & "B"). On October 28, 2004, Mr. Ellis was involved in an automobile accident when an Alabama Department of Corrections bus in which he was riding collided with another vehicle near Draper Correctional Facility. (See Complaint). As a precaution, Mr. Ellis was immediately transported to the emergency room at Baptist Medical Center South for evaluation. (See Exhibit "B").

Mr. Ellis' treating physician at Baptist South evaluated Mr. Ellis and determined that he had slight tenderness in the middle portion of his back and a small scratch to the front of his right leg. (Id.) Mr. Ellis was prescribed Motrin and Vicodin for pain. (Id.) Mr. Ellis was released from Baptist South later that same day. (Id.) He showed no signs of acute distress at discharge. (Id.)

After Ellis was returned to Elmore he received extensive x-ray evaluation. (Id.) Radiologist Maurice H. Rowell, M.D. evaluated x-rays of Mr. Ellis' lumbar spine and the mid-portion of Mr. Ellis' back. (Id.) Dr. Rowell found that Ellis' vertebrae were well aligned and that there was no evidence of fracture or destructive bone disease. (Id.) Radiologist Howard P. Schiele, M.D. reviewed Ellis' dorsal spine x-rays and concurred that there was no definite abnormality. (Id.)

Pursuant to this inmate's continuing complaints of pain, he was referred to Delbert Hahn, M.D. for a cervical MRI. (Id.) Dr. Hahn determined that Mr. Ellis' C2-3 and C3-4 intravertebral discs were unremarkable. (Id.) There were no significant disc protrusions at C4-C5 with minimal bulge centrally. (Id.) He found C5-C6 and C6-7 to be unremarkable with C7-T1 within normal limits. (Id.) Further, Dr. Hahn found no vertebral compression deformity. (Id.)

On December 21, 2004, Mr. Ellis was referred to Neurologist Nicholas F. Voss, M.D. for further evaluation. (Id.) Dr. Voss reviewed Ellis' medical records and determined that his complaints of back pain were most likely the result of a cervical strain. (Id.) He ordered CT scans to rule out possible hairline fractures. (Id.) On December 30, 2004, pursuant to Dr. Voss' recommendation, Mr. Ellis was again referred to Dr. Hahn for a CT scan of the cervical spine. (Id.) On January 20, 2005, Dr. Voss re-evaluated Mr. Ellis with the benefit of a full radiographic workup. (Id.) Dr. Voss determined that Mr. Ellis' x-rays, CT scans and MRIs were all normal without any significant radiographic findings. (Id.) Dr. Voss determined that Mr. Ellis suffered from no fracture, disc disease or misalignment. (Id.) He concluded that Ellis had full faculties

neurologically. (Id.) Mr. Ellis' claim that he suffers from a broken neck is completely unfounded. (Id.)

In order to make Mr. Ellis comfortable, he was afforded "light duty," "double mattress," "no prolonged standing," "bottom bunk" and "no weight" profiles. (Id.) In order to treat Mr. Ellis' pain, he has been prescribed Vicodin, Motrin, Feldene and Percogesic. (Id.)

The evidence now before the Court establishes that Ellis' medical conditions have been evaluated and treated in a timely and appropriate fashion by PHS and all other health care providers at Staton. (See Exhibits "A" & "B"). Ellis has been seen and evaluated by the medical or nursing staff, and has been referred to an appropriate care provider and given appropriate care, any time he registered any health care complaints at Staton. (Id.)  At all times, all PHS employees have exercised the same degree of care, skill, and diligence as other similarly situated health care providers would have exercised under the same or similar circumstances. (Id.) In other words, the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. (Id.)  At no time have any PHS employees ever denied Ellis any needed medical treatment, nor have they ever acted with deliberate indifference to any serious medical need of Ellis. (Id.)  At all times, Ellis' medical complaints and conditions have been addressed as promptly as possible under the circumstances. (Id.)

## III. <u>DEFENSES</u>

PHS asserts the following defenses to the plaintiff's claims:

1. PHS denies each and every material allegation contained in the plaintiff's Complaint and demands strict proof thereof.

2. PHS pleads not guilty to the charges in the plaintiff's Complaint.

3. The plaintiff's Complaint fails to state a claim against PHS for which relief can be granted.

4. PHS affirmatively denies any and all alleged claims by the plaintiff.

5. The plaintiff is not entitled to any relief requested in the Complaint.

6. PHS pleads the defense of qualified immunity and avers that the actions taken by them were reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the plaintiff.

7. PHS asserts the defense of res judicata.

8. PHS is entitled to qualified immunity and it is clear from the face of the Complaint that the plaintiff has not alleged specific facts indicating that PHS has violated any clearly established constitutional right.

9. PHS cannot be held liable on the basis of <u>respondeat superior</u>, agency, or vicarious liability theories.

10. The plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

11. The allegations contained in the plaintiff's Complaint against any PHS employee, sued in their individual capacities, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual

capacities. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

12. PHS pleads all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

13. PHS avers that it was at all times acting under color of state law and, therefore, it is entitled to substantive immunity under the law of the State of Alabama.

14. PHS pleads the general issue.

15. This Court lacks subject matter jurisdiction due to the fact that even if plaintiff's allegations should be proven, the allegations against PHS would amount to mere negligence which is not recognized as a deprivation of the plaintiff's constitutional rights. See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

16. The plaintiff's claims against PHS in its official capacity are barred by the Eleventh Amendment to the United States Constitution.

17. Alabama law provides tort and other remedies for the allegations made by the plaintiff herein and such remedies are constitutionally adequate.

18. PHS pleads the defense that at all times in treating plaintiff it exercised the same degree of care, skill, and diligence as other health care providers would have exercised under similar circumstances, and that at no time did it act towards the plaintiff with deliberate indifference to any serious medical need.

19. PHS pleads the affirmative defense that the plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render it liable to the plaintiff as required by § 6-5-551 of the Ala. Code (1993).

20.     PHS pleads the affirmative defenses of contributory negligence and assumption of the risk.

21.     PHS pleads the affirmative defense that plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

22.     PHS pleads the affirmative defense that it is not responsible for the policies and procedures of the Alabama Department of Corrections.

23.     PHS pleads the affirmative defense that the plaintiff has failed to mitigate his own damages.

24.     PHS pleads the affirmative defense that it is not guilty of any conduct which would justify the imposition of punitive damages against it and that any such award would violate the United States Constitution.

25.     PHS adopts and asserts all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

26.     The plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(a). The plaintiff has failed to pursue the administrative remedies available to him. See Cruz v. Jordan, 80 F. Supp. 2d 109 (S.D. N.Y. 1999) (claims concerning defendants' deliberate indifference to a medical need is an action "with respect to prison conditions" and is thus governed by exhaustion requirement).

27.     The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997(e)(c) mandates the dismissal of the plaintiff's claims herein as this action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks money damages from PHS who is entitled to immunity.

28.     The plaintiff's claims are barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e).

29.     The plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing <u>in forma pauperis</u> actions in federal court.

30.     Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from PHS who is a state officer entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

31.     PHS asserts that the plaintiff's Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and request this Court pursuant to 42 U.S.C. § 1988 to award PHS reasonable attorney's fees and costs incurred in the defense of this case.

## IV. <u>ARGUMENT</u>

In an effort to defeat baseless claims at the earliest possible opportunity, our Circuit requires that a plaintiff in a civil rights action allege with necessary specificity facts which demonstrate a claim. <u>GJR Investments, Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1367 (11th Cir. 1998). This requirement is in place so that a defendant can file an appropriate responsive pleading. <u>Anderson v. District Bd. of Trustees of Cent. Florida Community College</u>, 777 F.3d 364, 366 (11th Cir. 1996). Ellis does not meet this heightened pleading responsibility, and for that reason his Complaint is subject to dismissal.

In order to state a cognizable claim under the Eighth Amendment, Ellis must allege acts or omissions sufficiently harmful to evidence deliberate indifference. See Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 49 L. Ed. 2d 859 (1976); McElligott v. Foley, 182 F. 3d 1248, 1254 (11th Cir. 1999); Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176 (11th Cir. 1994); Palermo v. Correctional Medical Services, 133 F. Supp. 2d 1348 (S.D. Fla. 2001). In order to prevail, Ellis must allege and prove that he suffered from a serious medical need, that PHS was deliberately indifferent to his needs, and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, Alabama, 225 F. 3d 1243, 1255 (11th Cir. 2000) and Palermo, supra.

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Further, neither an alleged inadvertent failure to provide adequate medical care nor a physician's alleged negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is in prison. See Estelle, supra, McElligott, supra, Hill, supra and Palermo, supra. Further, a mere difference of opinion between an inmate and a health care provider as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. Estelle, supra, 429 U.S. at 106-108. PHS may only be liable if it had knowledge of Ellis' medical conditions and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed. Estelle, supra, 429 U.S. at 104-105 and Hill, supra, 40 F. 3d at 1191.

Obviously, plaintiff Ellis cannot carry his burden. The evidence submitted with this Special Report clearly shows that PHS did not act intentionally or recklessly to deny or delay medical care, or to interfere with any treatment which was prescribed or directed. (See Exhibits "A" & "B"). To the contrary, the evidence demonstrates that Ellis' claims are without merit, that his medical conditions were at all times adequately and timely addressed, and that he was neither denied any necessary medical treatment, nor harmed by any treatment provided by PHS. (Id.) Appropriate standards of care were followed at all times. (Id.) The evidence, in other words, shows without dispute that all of plaintiff Ellis' medical conditions were thoroughly evaluated, treated, and monitored in a timely and appropriate manner. (Id.) These facts clearly disprove any claim that PHS acted intentionally or recklessly to deny treatment or care.

To the extent that the plaintiff seeks to hold PHS liable for alleged acts or omissions of other persons or entities (including the Alabama Department of Corrections or any of its employees), such efforts must necessarily fail because there is no liability for violations of § 1983 under a theory of respondeat superior. See Monell v. Dept. of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Greason v. Kemp, 891 F.2d 829, 836 (11th Cir.1990). For this reason, PHS, like a government entity, can be liable under Section 1983 only if the plaintiff can prove that PHS caused a violation of his constitutional rights through its adoption of an official policy, practice, or custom. See Buckner v. Toro, 116 F.3d 450, 452-53 (11th Cir. 1997); Ort v. Pinchback, 786 F.2d 1105, 1107 (11th Cir. 1986). Just as there is no showing of any direct violation of plaintiff's constitutional rights by PHS, there is no allegation – much less any evidentiary

showing – that any PHS employees have violated plaintiff's constitutional rights through any official policy, practice, or custom.

Even further, PHS is entitled to qualified immunity from all claims asserted by Ellis in this action. There is no argument that any PHS employee was not acting within the scope of their discretionary authority. See Eubanks v. Gerwen, 40 F. 3d 1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994). Because PHS has demonstrated that it was acting within the scope of its discretionary authority, the burden shifts to Ellis to show that PHS violated clearly established law based upon objective standards. Eubanks, supra, 40 F. 3d at 1160. The Eleventh Circuit requires that before PHS' actions can be said to have violated clearly established constitutional rights, Ellis must show that the right allegedly violated was clearly established in a fact-specific, particularized sense. Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual. Vonstein v. Brescher, 904 F. 2d 572, 579 (11th Cir. 1990) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987)). As stated by the Eleventh Circuit in Lassiter v. Alabama A & M University, 28 F. 3d 1146, 1150 (11th Cir. 1994).

> In considering whether the law applicable to certain facts is clearly established, the facts of the case relied upon as precedent are important. The facts may not be

the same as the facts of immediate case. But they do need to be materially similar. <u>Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases</u>.

<u>Lassiter</u>, 28 F.3d at 1150 (citations omitted; emphasis in original).

Therefore, to defeat summary judgment, Ellis must be able to point to cases with "materially similar" facts within the Eleventh Circuit. <u>Hasoon v. Soldenwagner</u>, 19 F. 3d 1573, 1578 n. 6 (11th Cir. 1994). In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." <u>Lassiter</u>, 28 F. 3d at 1151. PHS submits that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that these alleged actions violated Ellis' constitutional rights. All Ellis' medical needs have been addressed or treated. (<u>See</u> Exhibits "A" & "B"). PHS has treated Ellis' conditions, prescribed and given needed medications, managed and treated his problems, and provided him access to nurses and physicians and appropriate medical care at all times. (<u>Id.</u>) The undisputed evidence shows that PHS has provided appropriate medical care to the plaintiff at all times. (<u>Id.</u>)

Pursuant to the Court's November 2, 2005 Order, PHS requests that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment. PHS has demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material fact relating to a constitutional

violation and that it is, therefore, entitled to a judgment in its favor as a matter of law. The plaintiff's submissions clearly fail to meet his required burden.

## V. CONCLUSION

The plaintiff's Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. Accordingly, PHS requests that this Honorable Court either dismiss the plaintiff's Complaint, with prejudice, or enter a judgment in its favor.

Respectfully submitted,

s/L. Peyton Chapman, III
Alabama State Bar Number CHA060
s/R. Brett Garrett
Alabama State Bar Number GAR085
Attorneys for defendant PHS

RUSHTON, STAKELY,
JOHNSTON & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270

Telephone: (334) 834-8480
Fax: (334) 262-6277
E-mail: lpc@rsjg.com

**CERTIFICATE OF SERVICE**

I do hereby certify that on the 8th day of December, 2005, I mailed via U.S. mail, properly addressed and first-class postage prepaid the foregoing document to the following:

    Clifford Ellis (AIS# 208226)
    Elmore Correctional Facility
    P.O. Box 8
    Elmore, AL 36025

                                        s/R. Brett Garrett
                                        Alabama State Bar Number GAR085